May it please the Court, Susanna Edesom for Appellant Sean Shaughnessy. I'd like to reserve four minutes for rebuttal. This Court is presented with a fundamental question. Does a vendor who sells controlled substances on a digital marketplace conspire with marketplace operators merely by using their platform without any communication, coordination, or shared intent? This case is about independent actors operating in a decentralized environment, not co-conspirators pursuing a shared criminal goal. Counts 1 and 2 charged Mr. Shaughnessy with conspiracy to distribute controlled substances and controlled substance analogs. The District Court erred in denying his Rule 29 motion because the government failed to prove that he conspired with either the marketplace administrators or with any identifiable drug suppliers to violate the drug laws. To prove conspiracy, the government had to establish beyond a reasonable doubt that Mr. Shaughnessy knowingly and voluntarily agreed with at least one other person to violate the drug laws. That requires a meeting of the minds, not mere association. Here, the evidence theory centered on the notion that Mr. Shaughnessy conspired with the dark web administrators, but they introduced no evidence of any communications, no emails, no texts, no calls, no payments, no co-conspirator statements, no records of any kinds indicating any coordination or agreement. There was no evidence that the administrators knew who he was, facilitated his activity, or shared his profits. The government seized and thoroughly searched his phones, his laptops, his residences, his vehicles, and his mailbox, but they uncovered nothing indicating a relationship existed, let alone an agreement. In fact, the record shows the values that this implies he was a poor vendor. A more reasonable inference is the reverse, that the dream marketplace distanced itself from Mr. Shaughnessy precisely because it discovered he was engaging in unlawful activity and wanted no part in it. Mr. Shaughnessy's own messages reflect his confusion about the situation and his inability to contact the administrators. He wrote, I've been on Dream since the start under three different names. My store was opened and then it wasn't. I've emailed them many times. No luck. This is not evidence of collaboration. This is evidence of disconnection. The government also relies on the general structures of these marketplaces, such as the dispute resolution systems, to suggest that there was an implicit agreement. But these structural features are common to online platforms, and they don't establish a criminal agreement. If they did, every seller would be in a conspiracy with the platform operators. And those platform structures are designed to serve all customers and vendors. Those structures don't establish a meeting of the minds or a concert of action between the vendors and the administrators. What matters is not the design of the website, but the existence of a shared criminal purpose. And importantly in this case, the government didn't show that the specific platforms that Mr. Shaughnessy was using employed the specific features that they discussed. They didn't show that the administrators knew what he was selling or how he was using their platforms. Moreover, Mr. Shaughnessy used at least 16 different marketplaces. He changed his usernames frequently, and he operated under different vendor profiles. It would have been difficult for any one of those marketplace operators to keep up with his changing persona. There's no evidence that any one platform tracked him or kept up with his changing identity, much less joined in his conduct. In Hinojosa, this court affirmed the conviction where the alleged co-conspirators facilitated the drug sales in their clubs. And they did that because there was evidence that the defendants were receiving profits, there was a shared objective, there was profit sharing, and there was an inference that the defendants had a tacit agreement to sell the drugs. Let me ask you this. Is your overarching argument that, about the quality of the evidence, in other words, you're surely not arguing that there was no direct evidence, in other words, tapes and that sort of thing, so that's not in the case, right? That's correct, Your Honor. So your argument is aimed at there was insufficient evidence to even establish tacitly? That's correct, Your Honor. There's insufficient evidence to establish even a tacit agreement. The government is basing their entire agreement that Mr. The whole theory is that just because he's on these marketplaces that there is an agreement, and that's insufficient. These marketplaces, they exist for both legal and illegal. And simply because one person is using it illegally, that doesn't show that these marketplaces operators are agreeing to that. There has to be something more to show that the marketplaces know that this person is using it illegally and that they are agreeing to it. This general painting the whole use of the marketplace, one person's use of it illegally, is insufficient. They need to tie this, the marketplace operators' actual knowledge to this defendant, and they haven't done that with any of the marketplaces. It's sort of a totality of the evidence, right? I mean, it's . . . How long was the trial? How many days was the trial? The trial was a total of six days, Your Honor. Okay, so I'm assuming. I haven't read the full record, but my assumption, typically the case unfurls, and all this evidence is sort of interlocked, et cetera, et cetera. Ultimately, at some point, the jury is charged with a pattern in terms of finding it. So I guess my question goes to acknowledge it doesn't have to be direct, or they don't have to have tapes. So precisely what's the deficit? Is it your argument that this could equally be an innocent marketplace, and that's what defeats the tacitness, as opposed to the only conclusion that could be drawn is that it's illegal? Is that sort of where you're headed? I'm not sure I understand the Court's question. Well, I'm just trying to go to you acknowledge that they didn't have to have direct evidence, you know, tapes and so forth. So your argument is about they don't prove enough to show a tacit agreement, right? Right, Your Honor. The evidence at trial was that he was on the dark web, and he was on multiple marketplaces. He used a total of 16 different marketplaces, and the evidence showed that he sold drugs on the dark web, and he used different usernames, and he used different marketplaces, and he would jump from one marketplace to another under different usernames, and sometimes he would be under the same marketplace and use that same marketplace but different usernames. And the government's theory was because the marketplace is the dark web, that they had to know that he was selling illegal goods. And that's not enough. They need to show something more. They need to show that the marketplace operators had some actual knowledge that he was doing this and that they agreed to it. Simply the fact that he's using the platform is insufficient. There was no evidence that the marketplace operators ever reviewed his listings. There was no co-conspirator testimony. There was no testimony that the marketplace employees had any texts or communications with him. There was nothing like that. The whole theory of the government's case was simply because he was on the dark web, he was guilty or he was conspiring with the operators. But there was no communications, no coordinations, no emails, no texts, no profit sharing, nothing to support that they knew what he was doing and that they agreed or were complicit in his activities. What's your best case on your side of this? I didn't see any cases that are directly, I think, I think Hinojosa is a good case to show the opposite, you know. Hinojosa, there was a lot of, in Hinojosa, there was the club, the defendants were actually receiving profits, they were facilitating the drugs, they knew what was going on. In the marketplace here, they don't, we don't have any evidence like what they have in Hinojosa. There's no, nothing to show that the marketplace operators knew what was going on, that they facilitated the sales, that they were receiving profits, that their profits were, that they were getting a benefit from him selling on their marketplaces. We don't know anything about these operators. We don't know where they are, if they're persons. For all we know, these marketplaces might be largely automated. We don't know anything about these marketplaces. And there was no testimony about these marketplaces, the specific marketplaces. The only testimony was about the marketplaces in general, how these marketplaces generally operate on the dark web, but no specific testimony about the specific marketplaces Mr. Shaughnessy was using and how he was using them, and whether the operators of these specific marketplaces ever saw his listings in acquiesced in his conduct. And we have the Dream Market, the government, they shut him down. And the government is saying that that shows that he was a poor vendor because Mr. Shaughnessy suggests that he believes that he was shut down because there were complaints against him. And my theory, I mean, they're saying that the inference is he was a bad vendor, who's a bad seller, who's a poor, he wasn't complying with his sales, people were complaining. But the other inference is that the Dream Marketplace became aware of what he was doing and they shut him down. They didn't want to be a part of him and they distanced themselves from him. And that's not evidence of collaboration. There was another marketplace called the Trade Route that also shut down, and he lost a lot of money on that. If he was in a conspiracy with Trade Route, that wouldn't have happened. So there's no evidence anywhere that these marketplaces are conspiring with him or collaborating with him. They're coordinating with him, that they're receiving money from him. There's nothing anywhere in these digital marketplaces to show that the operators are getting any benefit from him being on their marketplaces. There's an 11th Circuit case, the Decker case, that the government cites. And that case is really different from ours because that defendant pleaded guilty and he admitted to over 10,000, making 10,000 sales on one marketplace under one identity. And that is different from our case. We don't have the same number of sales on our marketplace, and we don't have them under one identity. So it simply doesn't apply. What was the defense in the case was primarily what, cross-examination of the government's witnesses? Yes, Your Honor, primarily cross-examination throughout. There wasn't like one overarching defense. And there's no, we don't have a jury charge issue, right? No. So pattern charges were what the judge used to channel the jury, is that right? Pardon me? Pattern charges. Yes, the pattern jury charges is what was given. I also want to address the idea that there were unknown drug users, that he might have conspired with these unknown drug suppliers. The government didn't show that, particularly with count one, there were four drugs that he was charged with in count one, and there were no seizures except for 2.8 grams of one of the drugs in count one. And aside from that, no other seizures of those drugs. And Mr. Shaughnessy was distributing these drugs to drug users, and he was distributing them in very small quantities, 250 milligrams, 500 milligrams, 1 gram. They didn't show any evidence that he was purchasing these controlled substances in any large amounts, whether he was purchasing them in 5 grams. They have no regular supplies, no regular purchases, no regular deliveries, nothing to show that he had a regular supplier that would know that he was redistributing them. And for all we know, Mr. Shaughnessy was also purchasing these drugs in similar small quantities, such that the... Let me stop you there and ask. Madam Clerk, give her an additional minute. All of you are really about the conspiracy. You also argue about the intrinsic or extrinsic evidence. Do you want to say a word about that? I mean, you don't have to. I'll give you an extra minute. If you want to comment, if you want to stand on your brief, that's fine also. I'll stand on my brief on that. I really wanted to focus on count one and on the sufficiency of the evidence, because I do believe that that is important, that the government didn't... With regard to the unknown drug suppliers, we don't have any evidence that he was buying them in any large quantities. For all we know, he was buying them in similar small quantities and redistributing them, because he was distributing them in very, very small quantities. Okay. That's fine. I just wanted to make sure you didn't miss it in case the government got up and you didn't get a chance to speak to it. But it's in the brief, so I mean, you haven't waived it. That's fine. So you've reserved your rebuttal time. Thank you. Thank you. All right. Excuse me. Ms. Hayworth, we'll hear from you. Were you trial counsel? I was not, Your Honor. I always like to have the trial counsel up here so I can find out exactly what you were thinking. All right. You're shielded by the veneer of, I wasn't there, but this is the file they gave me. All right. Press ahead. May it please the Court, Gail Hayworth on behalf of the United States. Turning first to the sufficiency issue, there was ample evidence to support count one and count two, the conspiracy counts, because viewing the evidence in the light most favorable to the jury's verdict, a reasonable jury could have easily found that the defendant conspired with at least one other person to violate the narcotics. That's easy enough to say, and that's what our cases say and so on and so forth and all of that. That's sort of hornbook. But at the same time, I'll say acknowledge you don't have to have direct evidence, et cetera. But there is a line between, you know, piling, as we say, inference on inference on inference. Of course, the jury is sitting over there looking and saying, well, he must have done something. But anyway, my point being, it's not a hollow argument to say that in this milieu of dark platforms that a jury might find this sort of nefarious period. Anyway, so counsel's argument is that it's not that you have to have direct evidence, but that even with a tacit agreement, that you've got to have something more potent than what was presented. So what's the most probative worth of the government's service? Is it the accumulation of it all? Is it that we point to some singular piece of what the government put and we look at the record to say, aha, this had to be, you know, what the jury last done? Can you help me? Sure. There was a wealth of evidence to show, to support an inference that the defendant conspired with the dark web marketplace administrators on the sites on which he was selling illegal drugs. And first of all, there was a wealth of evidence to show that these administrators set up websites where their primary business model was to facilitate illegal sales, particularly and especially illegal drug sales. The administrators chose to set up their websites not on the clear web, which most of us are familiar with, but on the dark web, which is much more anonymous and difficult for law enforcement to track. On top of this, their websites existed primarily to sell illegal goods. There was agent testimony that 95 to 99% of the items sold on the dark web marketplace's trade route and dream were illegal. The only thing the agent saw that was not illegal was guides on how to commit other crimes. Agent Samuels testified that they are like Amazon, except they sell illegal goods. And illegal drugs are among those sites' best sellers. He testified that illegal drugs are what is most frequently sold on those dark web marketplaces. But beyond this basic business model that shows an intent to facilitate drug trafficking, you have ample evidence that the administrators knowingly facilitated drug sales on their websites by structuring their websites to make it easy for drug customers to find the drugs they want. You simply go to the dark web marketplace and there will be a section that says drugs. You click on drugs. Depending on the marketplace, there might be subcategories of opioids, cocaine, pick your poison, and then they may further narrow down. Then you click on a vendor that you want and add to cart. As Shaughnessy's own customers testified, it was very easy to find the drugs they wanted on the dark web marketplaces and to buy drugs from a vendor who turned out to be the defendant. Beyond this, they facilitate drug sales by providing a dispute resolution process so that if customers don't get the drugs they ordered, they can make a report with the website and the website can take corrective action. In addition to that, they facilitate these drug sales by cloaking them in anonymity, which protects the vendors and the customers. They do this by, first of all, being on the hard-to-track dark web in the first place, but on top of this, using additional techniques that make it very hard for law enforcement to track them, which is mirroring and further encryption. On top of this, they enhance anonymity by allowing vendors and customers to use monikers instead of their real name and they require the use of cryptocurrency. On top of that, they use a payment system that also makes it even more difficult to track where the source of the bitcoin is coming from because the money all goes into one big pot that goes to the website before it's distributed to the vendors. But beyond this evidence showing that the dark web market administrators knowingly facilitated drug sales in general, you also have evidence showing that they knowingly facilitated this defendant's drug sales. Shaughnessy's username on the Dream Marketplace was Fent4U. His username on TradeRoute was DarkNetCartel. These names specifically highlight to those websites what he's dealing in and they knowingly allowed him to continue to do it. His user profile on Dream expressly referenced that he was selling illegal drugs, noting that he has CW, which is China White, R3490, which is MAF, very good quality product and his bags are heavy. His user profile on Dream further stated that Dream had shut down his store after customers complained that they were not getting the drugs they ordered from him, demonstrating that Dream's administrators knew what he was offering on their site and they penalized him when he did not deliver the drugs that his customers ordered. Now, the defense argues that they're construing, this is Government Exhibit 55, they argue there's alternative inferences, but the inferences must be resolved in favor of the jury's verdict and that shows that he was shut down because customers were complaining that they didn't get drugs and then apparently he's communicating with Dream because he's emailing them many times and then they reopened his store. They closed and reopened his store several times, ultimately reopening it based on the inference of Government 35, reading it in the light most favorable to the jury's verdict. So thus by knowingly facilitating his drug sales, that's by providing him with a platform, the anonymity and the customer support to distribute illegal narcotics, the Dark Web Marketplace administrators entered into a tacit agreement with him to violate the narcotics laws. So just as in Hinojosa, Hall, and Decker, this knowing facilitation of drug trafficking is enough to show an agreement. Beyond this, there's also ample evidence to show that he agreed with his drug suppliers. In his brief, Shaughnessy appears to concede that he's conspired with the drug supplier of the ethylhexadrone, which was shipped to him in May 2018. This concession is enough to support Count 2 because under this court's precedent, patino prado, the government only has to approve one of the substances alleged in the count. Beyond this, there was also ample evidence to show that he distributed and possessed with intent to distribute all of the controlled substances listed in Counts 1 and 2. All four of the controlled substances listed in Count 1 were in his drug ledgers and I can go to record sites if the court needs to. Beyond this, pentadrone was found in his motel room in July 2016. I'm going to ask you this. You mentioned you said some of his customers testified? I'm sorry? Some of the defendant's customers testified at trial? That's correct. Okay, give me a snippet. I mean, give me a snippet of what their testimony is. Sure. What further shows the tacit agreement? The tacit agreement from their testimony would be that it shows how the websites make it so easy for them to find the drugs and to ultimately find them from the defendant. They just go to that Dream website and they find the drugs that they want and they like the vendor. On Dream, it was Brit Osborne who was testifying that he picked the vendor, Fent4U, which happened to be Shaughnessy, the defendant, and he bought the drugs from there. Okay. As for the Count 2 analogs, there was also ample evidence showing the defendant distributed those analogs. The MAF analog was listed in the drug ledger and ethylhexadrone was found in his motel room in 2016. In addition to the two packages that were seized that contained distribution amounts, there were also distribution amounts found in his Coronado residence in May 2018. Concerning the analog FUB-144, there were distribution amounts found in his Coronado residence in May 2018. So beyond this evidence showing that he is distributing each of these controlled substances alleged in Count 1 and each of the analogs alleged in Count 2, there was ample evidence that his modus operandi was to get his supply from dark web marketplace vendors. So what is your best case on your side of this? For the administrator conspirators or for the supplier conspirators? Well, either one. What is your best case that supports the notion that he had conspirators? So for the conspiring with the dark web administrators, that would be Hinojosa, Hall, Decker. In addition to just the general principle seen in Freeman and Chapman that if you knowingly facilitate drug trafficking, you are a conspirator. As far as conspiring with the drug suppliers, the best case for that would be Dukes where he conspired with an unknown supplier where there was So here there was ample evidence showing that his modus operandi was to get his supply from the dark web and these included handwritten notes listing trusted suppliers and vendors in his drug ledgers. Handwritten notes listing the drugs he wanted to buy from dark web marketplaces including Fent, HCL, which is powder fentanyl. Handwritten notes saying that he has coming a number of drugs including three powders, Pentadrone and Fent. Handwritten notes listing quantities of drugs and corresponding prices. Multiple post office boxes and two seized packages from China which contained distribution amounts of N-ethyl hexadrone. Agent testimony that illegal drugs are often shipped from China and Hong Kong and 13 other packages that the defendant received from mainland China or Hong Kong including 11 that he received in a four month period. On top of this, you have the evidence of his overwhelming involvement on the dark web marketplaces and the total lack of indication that he's getting the drugs he's distributing from anywhere else but the dark web. Based on this, a reasonable jury could have easily found that he conspired with his drug suppliers to possess with intent to distribute at least one of the controlled substances listed in count one or at least one of the controlled substances listed in count two. In sum, there was ample evidence more than enough for a reasonable jury to find that he conspired with at least one other person to distribute drugs. And if the court has any other questions on the other issues, I'm happy to address those. Otherwise, we ask the court to affirm. Thank you. Back to you counsel for rebuttal. Your honors, the dark web is not inherently illegal or criminal. The use of monikers, the problem with inferring criminal liability because somebody has a moniker is perilous and it's dangerous. Everybody on the dark web or even on the regular web uses monikers and these monikers are often imaginative, satirical, coded and to infer that somebody might take these seriously and infer some type of that's really dangerous, that they should know what that means because somebody uses a specific moniker and to show that they might attribute some criminal liability, that's dangerous. And so the fact that Mr. Shaughnessy had a moniker that indicated that had some sort of meaning is just not what the law provides, that because of his moniker there should be some sort of criminal liability for these marketplace operators. And the fact that cryptocurrency, that's just the currency that is used in the dark web and it's becoming more and more commonplace, not just in the dark web but in the clear web and in our society. That doesn't mean a lot. Also the fact that he had these listings that were coded, CW for China White and all these other codings and there's nothing, no testimony that these marketplace operators do what those codings mean. We don't know where these marketplace operators were. So there's, we don't even know if they were looking at them in real time or if these marketplaces are automated. And I believe that counsel is conflating the stores with the platform which is talking about clicking on the drugs and looking for those drugs because what the marketplace operators do is they provide a platform and then the vendors come in and create a store where they can list their items. So the marketplace operators provide a platform, the vendors create the stores. The operators don't have control over the stores and what the vendors put on their stores. With regard to the unknown drug dealers, there was no testimony about any of these unknown drug suppliers with regard to count one, the substances, the controlled substances in count one for any deliveries. For all we know, Mr. Shaughnessy was purchasing these drugs in similar small quantities. There was no seizures for any of the drugs in count one. He was distributing them in very small user quantities. We have no idea who he was getting them from. He refers to himself as a trusted supplier but when he refers to the notes in his ledgers as other people, he's talking about his own subjective intent. There's never any communications or coordination or any emails or texts from anybody else that shows that they understand what he's doing with any drugs that he might have received from them. So Mr. Shaughnessy would ask the court to reverse his convictions, particularly on count one, to render judgment for him and to demand for resentencing. Thank you, counsel. Counsel, we note that you are court appointed and this panel and our court as a whole is deeply appreciative of you and other counsel who take on these cases. This was a multi-day jury trial. There's a whole ton of evidence here, a lot of issues, a lot of arguments and so it warrants applause to you for taking it on and doing a noble job to advocate on behalf of your client. So thank you and we appreciate you for doing it in this case and other cases that you'll do. Thank you. I appreciate it. Thank you. Thank you, counsel for the government. Appreciate it. The case will be submitted. All right. We call up our